On Rehearing.
SOMMERVILLE, J.
A rehearing in this cáse was granted on the applications of plaintiff and defendant. We have had the benefit of oral arguments and printed briefs on behalf of both parties, and they have been full and complete. We have again given the matter our most serious consideration; and we have concluded not to depart from our original findings in the case to the effect that the transportation or tonnage contract was not violated by defendant, and that the obligation of the plaintiff railroad company to give to the defendant reasonable service and rates, and equal service and rates obtainable from other roads, was not being complied with by it. For the reasons in our former opinion, we adhere to the conclusions therein expressed on those two points.
We hereinbefore mentioned a contract of date June 27, 1902, wherein the George W. Pack Land & Lumber Company of New York agreed to sell to William E. Kelley and Allan H. Daugherty some 18,000 acres of land in the state of Louisiana for $554,842.80, payable in yearly installments ending June 27, 1906, represented by five promissory notes of even date with said agreement. That agreement to sell contains a stipulation pour *309 autrui in favor of the Louisiana & Arkansas Railway Company, which, in effect, required Kelley and Daugherty to enter into a contract with said railroad, and which has been termed by the parties a tonnage contract; this tonnage contract was declared to extend to and to be binding upon the legal representatives and assigns of the parties to the act of sale. It is this tonnage contract which was submitted to the court for consideration and determination on the former hearing by oral and printed arguments.
The Winn Parish Lumber Company, defendant here, acquired by mesne conveyances on June 25, 1906, all the rights which were held by Kelley and Daugherty under the latter’s agreement with the Pack Company. There appear to have been differences between the Pack Company and the plaintiff railroad company on the one side and the Winn Parish Lumber Company, defendant here, ever since the Winn Company acquired its rights in and to the property; for we find that April 27, 1907, the Winn Parish Lumber Company went into the Circuit Court of the United States and filed a complaint there against the George W. Pack Land & Lumber Company and the Louisiana & Arkansas Railway Company, asking for a specific performance by the Pack Company of its written agreement to sell, and to make a written transfer of, said land to the lumber company, and to compel the Pack Company to accept the last installment of the purchase price. In its bill of complaint, the lumber company attacked the said tonnage contract as being invalid, null and void, and contrary to the laws and public policy of the state of Louisiana. Nevertheless, “as a peace offering” to said George W. Pack Land & Lumber Company, the complainant in that suit offered to enter, into the tonnage contract referred to. Subsequently the lumber company amended its bill by striking therefrom all references to the said tonnage contract, and simply asked that, in connection therewith, the court fix the form and terms of the transportation contract to be signed by it with the Louisiana & Arkansas Railway Company, provided for in said agreement of date June 27, 1902, in the exact language provided in said agreement of sale, reserving to the lumber company at all times the interpretation of said contract; the said interpretation being not an issue in the cause. Nevertheless the respondents in that suit, the George W. Pack Land & Lumber Company and the Louisiana & Arkansas Railway Company, denied that the contract referred to was void and impossible of enforcement, and of no binding effect upon either of the parties thereto, because of its being contrary to the public policy of the state of Louisiana and of the United States; and they asked the court to declare the contract to be valid and binding. The court in its decree ordered the specific performance by the Pack Company, Limited, of its contract of 1902 by making a deed of sale of the land to the complainant; and it ordered the Pack Company to receive the last installment on the purchase price, which had been deposited by the lumber company in court. The court also ordered the lumber company to enter into a tonnage contract in the words and figures contained in the original contract of 1902. The court “further ordered, adjudged, and decreed that nothing in this decree shall be construed as deciding that the tonnage contract, aforesaid, is a covenant which runs with the title of the land conveyed by the G. W. Pack Land & Lumber Company, or that it is not a covenant running with the title to said land; the court considering that it is not necessary to decide that question at this time.”
In accordance with the decree just referred to, the Winn Parish Lumber Company entered into a contract with the Louisiana & Arkansas Railway Company, stipulating *311 in effect that the said company would give “the tonnage arising from the manufacture of timber or logs cut from said land” to the plaintiff in this suit. The defendant lumber company had the undoubted right to make this contract, and we understand its position here to be that it is willing to abide by the terms thereof. But it has argued very strenuously against that contract “being a covenant running with the land” which it owns, and which it acquired from the Pack Company. On the other hand, - the plaintiff contends that the contract referred to does run with the land, and it has asked us to so decide.
On the several demands of plaintiff and defendant, and these demands form parts of the pleadings filed by them, respectively, and they have been supported by earnest and forceful arguments, we undertook, in our original opinion, to decide whether, under the law of Louisiana, the tonnage contract referred to runs with the land of defendant or not. But in the argument on rehearing defendant urges that a decision on that point is unnecessary, and that it is merely a moot question.
[4] As the case is now presented to us, we conclude that it is unnecessary at this time to decide that question. The defendant is not seeking to avoid the contract in any way. It voluntarily entered into that contract, and it admits that it is bound by its terms. The effect of that contract on the land of defendant can only become a live question when third persons acquire titles thereto. It may well be that this defendant will never sell these lands; or, if it does, the purchasers may be very willing to enter into the same agreement with plaintiff, or one similar thereto; and then there would be no complaint on the part of plaintiff. We have held in our former opinion that this defendant had the right to sell the standing | timber on the land, and defendant may have no “tonnage arising from the manufacture of the timber or logs cut from said lands” to give to plaintiff, or to any one else.
We are not unmindful of the fact that the matter here referred to may become, in the near future, a very serious one in this state; or that there is great diversity of opinion among the legal fraternity as to the validity and binding force of such an agreement; or that there is much difference of judgment as to the wisdom of such a contract. Just at this time we understand there are promoters in our midst trying to establish great sugar estates, large rice plantations, extensive sawmills, perhaps big corn mills, where small purchasers of land from these different enterprises may be bound by written contracts to deliver their cane to the sugar factory, or the rice growing on their lands to the rice mill, or the corn to certain elevators, etc., and that these covenants shall run with the land, and that there may be shortly established a system of serfdom similar to that which took a revolution in France to uproot and destroy. These contracts suggest a return to feudal times, when the lord of the manor held the small farmers under his control and domination. But this is a matter which commends itself to the careful consideration of the General Assembly, which is now in session in this state. We prefer, under the circumstances, not to express our opinion upon this very weighty matter. It is not necessary to be disposed of in the present ease.
We have found that this defendant has not violated the contract between it and plaintiff, and that plaintiff’s suit must be dismissed. The time for us to pass upon the matter last referred to will be when some plaintiff alleges and proves that the holder and owner of certain land declines to comply with a tonnage contract, like the one under consideration, or a contract similar *313 in its scope and nature, which has been entered into by his authors in title.
It is therefore ordered, adjudged, and decreed that our former decree be reinstated and made the judgment of the court, in so far as it affirms the judgment appealed from, rejecting the demand of plaintiff for damages, and denies the writ of injunction prayed for.
It is further ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, in so far as it rejected the demand of plaintiff that the tonnage contract sued upon be declared to attach to and affects the property which is the subject of that contract, and that a judgment of nonsuit be entered as to that demand; that plaintiff pay the costs of the trial court, and defendant pay the costs of appeal.
See separate opinion of PROYOSTX, J., 59 South. 411.
See dissenting opinion of MONROE, J., 59 South. 428.